43. Pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure, the medical, nursing, and health care provided by the Defendants as herein alleged has been reviewed by persons who are reasonably expected to qualify as expert witnesses under Rule 702 of the North Carolina Rules of Evidence and who are willing to testify that the medical, nursing, and health care provided to Kathleen Marie Jabkiewicz did not comply with the applicable standards of care.

44. The Plaintiff Joseph Jabkiewicz, as administrator of the Estate of Kathleen Marie Jabkiewicz, is entitled to recover from the Defendants, jointly and severally, a sum in excess of $10,000.00 for the wrongful death of Kathleen Marie Jabkiewicz.

## SECOND CAUSE OF ACTION
(Negligent Infliction of Emotional Harm to Michael Steven Jabkiewicz)

45. The forgoing paragraphs 1 through 44, inclusive, are hereby repleaded and realleged as if more fully set forth herein.

46. As a direct and proximate result of their negligent conduct, the Defendants could reasonably foresee that Minor Plaintiff Michael Steven Jabkiewicz, as a minor son of Kathleen Marie Jabkiewicz, would suffer severe psychological injury and require care by a mental health professional.

47. As a direct and proximate result of the aforesaid joint and concurrent negligence of the Defendants, Minor Plaintiff Michael Steven Jabkiewicz sustained personal injuries and emotional harm, has and will continue to require psychiatric care, therapy, medical care and attention, and is entitled to recover from the Defendants, joint and severally, damages in excess of $10,000.00.

48. As a direct and proximate result of the joint and concurrent negligence of the Defendants, Plaintiff Joseph Jabkiewicz has become obligated to pay for the past and ongoing medical care, therapy, and psychiatric treatment for his minor child Michael Steven Jabkiewicz and is entitled to recover from the Defendants, jointly and severally, compensatory damages to be determined.

## THIRD CAUSE OF ACTION
(Negligent Infliction of Emotional Harm to Matthew Joseph Jabkiewicz)

49. The forgoing paragraphs 1 through 44, inclusive, are hereby repleaded and realleged as if more fully set forth herein.

50. As a direct and proximate result of their negligent conduct, the Defendants could reasonably foresee that Minor Plaintiff Matthew Joseph Jabkiewicz, as a son of Kathleen Marie Jabkiewicz, would suffer severe psychological injury and require care by a mental health professional.

51. As a direct and proximate result of the aforesaid joint and concurrent negligence of the Defendants, Minor Plaintiff Matthew Joseph Jabkiewicz sustained personal injuries and emotional harm, has and will continue to require psychiatric care, therapy, medical care and attention, and is entitled to recover from the Defendants, joint and severally, damages in excess of $10,000.00.

52. As a direct and proximate result of the joint and concurrent negligence of the Defendants, Plaintiff Joseph Jabkiewicz has become obligated to pay for the past and ongoing medical care, therapy, and psychiatric treatment for his minor child Matthew Joseph Jabkiewicz and is entitled to recover from the Defendants, jointly and severally, compensatory damages to be determined.

## FOURTH CAUSE OF ACTION
(Negligent Infliction of Emotional Harm to Joseph Jabkiewicz)

53. The forgoing paragraphs 1 through 44, inclusive, are hereby repleaded and realleged as if more fully set forth herein.

54. As a direct and proximate result of the aforesaid negligence, the Defendants could reasonably foresee that Plaintiff Joseph Jabkiewicz, as the spouse of Kathleen Marie Jabkiewicz, would suffer severe psychological injury and require care by a mental health professional.

55. As a direct and proximate result of the aforesaid joint and concurrent negligence of the Defendants, Plaintiff Joseph Jabkiewicz sustained personal injuries and emotional harm, has and will continue to require psychiatric care, therapy, medical care, and attention, has lost wages, and is entitled to recover from the Defendants, joint and severally, damages in excess of $10,000.00.

**WHEREFORE**, the Plaintiffs pray that:

1. Plaintiff Joseph Jabkiewicz, as Administrator of the Estate of Kathleen Marie Jabkiewicz, have and recover judgment against the Defendants, jointly and severally, in a sum in excess of $10,000.00 for the personal injuries to and wrongful death of Kathleen Marie Jabkiewicz;

2. Plaintiff Joseph Jabkiewicz, individually, have and recover judgment against the Defendants, jointly and severally, in a sum in excess of $10,000.00 for personal injuries and the recovery of medical expenses;

3. Minor Plaintiff Matthew Joseph Jabkiewicz, by and through his Guardian Ad Litem, have and recover judgment against the Defendants, jointly and severally, in a sum in excess $10,000.00 for personal injuries;

4. Minor Plaintiff Michael Steven Jabkiewicz, by and through his Guardian Ad Litem, have and recover judgment against the Defendants, jointly and severally, in a sum in excess of $10,000.00 for personal injuries;

{W0188247-2}                                        8

5. All issues be tried by jury;

6. The Plaintiffs have and recover their costs and interest; and

7. The Plaintiffs have and recover such other and further relief as the Court deems just and proper.

This the 20th day of June, 2005.


OF COUNSEL:

CAUDLE & SPEARS, P.A.
121 West Trade Street
2600 Interstate Tower
Charlotte NC 28202
Telephone: 704-377-1200
Facsimile: 704-338-5858

_____
Harold C. Spears

_____
Eric Allen Rogers
Attorneys for Plaintiffs

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

Joseph Stanly Jabkiewicz, being first duly sworn, deposes and says that he is the Administrator of the Estate of Kathleen Marie Jabkiewicz; that as such he is duly authorized to make this verification; that he has read the foregoing Complaint and knows the contents thereof; that the same is true of his own knowledge, except as to those matters and things therein stated upon information and belief, and as to those matters and things, he believes the same to be true.

_____
Joseph Stanly Jabkiewicz

Sworn to and subscribed before me
this __17__ day of February, 2005.

_____
Notary Public

My Commission Expires: _1 — 11 — 2010_

{W0189009-1}

STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
                                       SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG               05-CVS-11118

| | |
|---|---|
| JOSEPH STANLY JABKIEWICZ, Administrator of the ESTATE OF KATHLEEN MARIE JABKIEWICZ, and JOSEPH STANLY JABKIEWICZ, Individually, and as Guardian Ad Litem for Minors MATTHEW JOSEPH JABKIEWICZ and MICHAEL STEVEN JABKIEWICZ,<br><br>Plaintiffs,<br><br>vs.<br><br>JOSEPH G. JEMSEK, M.D., CHRISTIE ROESKE, R.N.P., and THE JEMSEK CLINIC, P.A.,<br><br>Defendants. | **PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS TO THE JEMSEK CLINIC, P.A.** |

The Plaintiffs, pursuant to Rule 36 of the North Carolina Rules of Civil Procedure, hereby request that Defendant The Jemsek Clinic, P.A. admit the truth of the following:

### DEFINITIONS

1. Time Frame - Unless otherwise noted, the following Requests refer to the time frame, and to the acts and omissions referred to in the Complaint.

### REQUEST FOR ADMISSIONS

1. Kathleen Marie Jabkiewicz died on March 6, 2004 or March 7, 2004.

RESPONSE:

2. Kathleen Marie Jabkiewicz was forty-one (41) years old at the time of her death.

{W0188994-2}

RESPONSE:

3. Kathleen Marie Jabkiewicz had two ten (10) year old children, Matthew Joseph Jabkiewicz and Michael Steven Jabkiewicz at the time of her death.

RESPONSE:

4. Plaintiff Joseph Stanly Jabkiewicz and Kathleen Marie Jabkiewicz were married as husband and wife at the time of her death.

RESPONSE:

5. Defendant Joseph G. Jemsek, M.D. ("Dr. Jemsek") is the medical director for The Jemsek Clinic, P.A. (the "Jemsek Clinic").

RESPONSE:

6. Dr. Jemsek is a physician who is licensed to practice medicine in the State of North Carolina and who is board certified in internal medicine.

RESPONSE:

7. Dr. Jemsek holds himself out as a specialist in the field of infectious disease.

RESPONSE:

8. Dr. Jemsek holds himself out as a specialist in the treatment and care of individuals afflicted with Lyme disease.

{W0188994-2}

2

RESPONSE:


9. Dr. Jemsek held himself out to Kathleen Marie Jabkiewicz as a specialist in the treatment and care of Lyme disease.

RESPONSE:


10. Christie Roeske, RNP ("Nurse Roeske") was an employee of the Jemsek Clinic on and before March 5, 2004.

RESPONSE:


11. At all times Nurse Roeske is referred to in the Complaint, Nurse Roeske was a duly authorized and acting employee or agent of the Jemsek Clinic.

RESPONSE:


12. At all times Nurse Roeske is referred to in the Complaint, Nurse Roeske was acting within the course and scope of her employment or agency with the Jemsek Clinic.

RESPONSE:


13. At all times referred to in the Complaint, the Jemsek Clinic was legally responsible for any acts or omissions of Nurse Roeske.

RESPONSE:

14. At all times referred to in the Complaint, Dr. Jemsek was legally responsible for any acts or omissions of Nurse Roeske.

RESPONSE:

15. At all times referred to in the Complaint, Dr. Jemsek was legally responsible for any acts or omissions of any nurses and health care providers who were duly authorized and acting employees or agents of the Jemsek Clinic and who were acting within the course and scope of their employment or agency.

RESPONSE:

16. At all times referred to in the Complaint, the Jemsek Clinic was legally responsible for any acts or omissions of any physicians who were duly authorized and acting employees or agents of the Jemsek Clinic and who were acting within the course and scope of their employment or agency.

RESPONSE:

17. At all times referred to in the Complaint, Dr. Jemsek was a duly authorized and acting employee or agent of the Jemsek Clinic.

RESPONSE:

18. At all times referred to in the Complaint, Dr. Jemsek was acting within the course and scope of his employment or agency with the Jemsek Clinic.

RESPONSE:

19. At all times referred to in the Complaint, the Jemsek Clinic was legally responsible for any acts or omissions of Dr. Jemsek.

{W0188994-2}                                    4

RESPONSE:


20.   The autopsy report attached hereto and marked Bates Stamped pages 1 through 13 (the "Autopsy Report") is a true, genuine, authentic, and accurate copy of the original autopsy report prepared by the Office of the Medical Examiner for Mecklenburg County, North Carolina, concerning the death of Kathleen Marie Jabkiewicz.

RESPONSE:


21.   The Autopsy Report is admissible into evidence without further authentication.

RESPONSE:


22.   The death certificate attached hereto and marked Bates Stamped pages 14 and 15 (the "Death Certificate") is a true, genuine, authentic, and accurate copy of the original death certificate for Kathleen Marie Jabkiewicz.

RESPONSE:


23.   The Death Certificate is admissible into evidence without further authentication.

RESPONSE:


24.   At all times referred to in the Complaint, Dr. Kenneth S. Snell ("Dr. Snell") was a physician who was duly licensed to practice medicine in the State of North Carolina.

RESPONSE:


{W0188994-2}

5

25. At all times referred to in the Complaint, Dr. Snell was a specialist in the field of pathology.

RESPONSE:

26. At all times referred to in the Complaint, Dr. Snell was acting within the course and scope of his official duties as a pathologist for the Mecklenburg County Office of the Medical Examiner.

RESPONSE:

27. Dr. Snell performed the autopsy on Kathleen Marie Jabkiewicz.

RESPONSE:

28. Dr. Snell prepared the Autopsy Report of Kathleen Marie Jabkiewicz.

RESPONSE:

29. Based on his autopsy of Kathleen Marie Jabkiewicz, Dr. Snell found that the cause of death was "morphine toxicity complications."

RESPONSE:

30. The findings and conclusions of Dr. Snell as set forth in the Autopsy Report are true, correct, and accurate.

RESPONSE:

{W0188994-2}                                    6

31.     The cause of death of Kathleen Marie Jabkiewicz was morphine toxicity complications.

RESPONSE:

32.     Kathleen Marie Jabkiewicz died as a direct and proximate result of morphine toxicity complications.

RESPONSE:

33.     The toxicology report attached hereto and marked Bates Stamped pages 10 and 11 (the "Toxicology Report") is a true and accurate copy of the original toxicology report prepared by the Office of the Chief Medical Examiner in Chapel Hill, North Carolina.

RESPONSE:

34.     The findings contained in the Toxicology Report are true, correct, and accurate.

RESPONSE:

35.     The Toxicology Report is admissible into evidence without further authentication.

RESPONSE:

36.     On or about March 5, 2004, Dr. Jemsek prescribed sixty (60) thirty (30) milligram morphine sulfate tablets to Kathleen Marie Jabkiewicz.

RESPONSE:

{W0188994-2}                                    7

37. On or about March 5, 2004, Nurse Roeske wrote a prescription for sixty (60) thirty (30) milligram morphine sulfate tablets to Kathleen Marie Jabkiewicz.

RESPONSE:

38. The morphine sulfate prescription attached hereto and marked as Bates Stamped page 555 (the "Morphine Prescription") is a true, genuine, and accurate copy of the original prescription written by Nurse Roeske to Kathleen Marie Jabkiewicz.

RESPONSE:

39. The Morphine Prescription calls for a dosage of one (1) to two (2) thirty (30) milligram tablets of morphine sulfate every four (4) to six (6) hours as needed for pain.

RESPONSE:

40. Nurse Roeske's DEA number is MR0427953.

RESPONSE:

41. The handwritten notations appearing on the Morphine Prescription are the handwriting of Nurse Roeske.

RESPONSE:

42. The handwriting on the Morphine Prescription stating "*Morphine Sulfate Immediate Release. Take 1 to 2 tablets by mouth every 4 to 6 hours as needed for pain*" was written by Nurse Roeske.

{W0188994-2}

8