RESPONSE:

43.   The Morphine Prescription was prescribed by Dr. Jemsek.

RESPONSE:

44.   The Morphine Prescription was issued at the direction of Dr. Jemsek.

RESPONSE:

45.   Dr. Jemsek directed Nurse Roeske to issue a prescription for sixty (60) thirty (30) milligram morphine sulfate tablets to Kathleen Marie Jabkiewicz.

RESPONSE:

46.   On March 6, 2004, the Walgreens pharmacy located at 16711 Birkdale Commons Parkway, Huntersville, North Carolina ("Walgreens") filled the Morphine Prescription for Kathleen Marie Jabkiewicz.

RESPONSE:

47.   On March 6, 2004, sixty (60) thirty (30) milligram morphine sulfate immediate release tablets were obtained by Kathleen Marie Jabkiewicz pursuant to the Morphine Prescription (the "Prescribed Morphine Tablets").

RESPONSE:

{W0188994-2 }                                    9

48.     Kathleen Marie Jabkiewicz ingested two of the Prescribed Morphine Tablets on March 6, 2004 or March 7, 2004.

RESPONSE:

49.     Kathleen Marie Jabkiewicz's ingestion of two of the Prescribed Morphine Tablets was consistent with the directions on the Morphine Prescription.

RESPONSE:

50.     Kathleen Marie Jabkiewicz's ingestion of two of the Prescribed Morphine Tablets was the only morphine that Kathleen Marie Jabkiewicz ingested or consumed on March 6, 2004 or March 7, 2004.

RESPONSE:

51.     The two Prescribed Morphine Tablets ingested by Kathleen Marie Jabkiewicz on March 6, 2004 or March 7, 2004 are the morphine tablets responsible for Kathleen Marie Jabkiewicz's death.

RESPONSE:

52.     The two Prescribed Morphine Tablets ingested by Kathleen Marie Jabkiewicz on March 6, 2004 or March 7, 2004 are the morphine tablets that caused Kathleen Marie Jabkiewicz to die from morphine toxicity complications.

RESPONSE:

53.     Kathleen Marie Jabkiewicz died as a direct and proximate result of the morphine prescribed and ingested pursuant to the Morphine Prescription.

{W0188994-2 }

10

RESPONSE:


54.    At all times referred to in the Complaint, Dr. Hugh Hinson ("Dr. Hinson") was a physician who was duly licensed to practice medicine in the State of North Carolina.

RESPONSE:


55.    At all times referred to in the Complaint, Dr. Hinson was acting within the course and scope of his official duties as a Medical Examiner of the North Carolina Department of Health and Human Services, Office of the Chief Medical Examiner.

RESPONSE:


56.    The narrative summary on Bates Stamped page 13 was prepared by Dr. Hinson in his official capacity as a medical examiner.

RESPONSE:


57.    The narrative summary identified on Bates Stamped page 13, prepared by Dr. Hinson, is a true, genuine, authentic, and accurate copy of the original narrative summary and is admissible into evidence without further authentication.

RESPONSE:


58.    Bates Stamped page 15, identified as a Supplemental Report of Cause of Death, is a true, genuine, authentic, and accurate copy of the original Supplemental Report of Cause of Death for Kathleen Marie Jabkiewicz.

RESPONSE:

59.     The immediate cause of Kathleen Marie Jabkiewicz's death as identified on the Supplemental Report of Cause of Death identified on Bates Stamped page 15, line A, is morphine poisoning.

RESPONSE:

60.     Bates Stamped page 15, identified as Supplemental Report of Cause of Death for Kathleen Marie Jabkiewicz, is admissible into evidence without further authentication.

RESPONSE:

61.     Kathleen Marie Jabkiewicz died as a result of morphine poisoning.

RESPONSE:

62.     Kathleen Marie Jabkiewicz died as a result of morphine poisoning due to her ingestion of two of the Prescribed Morphine Tablets.

RESPONSE:

63.     Kathleen Marie Jabkiewicz suffered acute respiratory failure secondary to morphine poisoning.

RESPONSE:

64.     Nurse Roeske negligently prescribed or issued the Morphine Prescription to Kathleen Marie Jabkiewicz.

{W0188994-2 }                                              12

RESPONSE:

65.    Nurse Roeske breached the standard of care among members of her same health care profession with similar training and experience in the same or similar communities when she prescribed or issued the Morphine Prescription.

RESPONSE:

66.    Dr. Jemsek negligently failed to supervise Nurse Roeske at the time of the writing of the Morphine Prescription.

RESPONSE:

67.    Dr. Jemsek negligently prescribed sixty (60) thirty (30) milligram morphine sulfate tablets to Kathleen Marie Jabkiewicz as identified on Bates Stamped page 555.

RESPONSE:

68.    Dr. Jemsek breached the standard of care among members of his same medical profession with similar training and experience in the same or similar circumstances when he prescribed or directed Nurse Roeske to issue the Morphine Prescription.

RESPONSE:

69.    Dr. Jemsek breached the standard of care among members of his same medical profession with similar training and experience in the same or similar circumstances when he failed to properly supervise Nurse Roeske in connection with the issuance of the Morphine Prescription.

RESPONSE:

{W0188994-2}                                    13

70.     Bates Stamped pages 297 through 480 represent a complete copy of all of the medical records from the Jemsek Clinic in connection with the examination and treatment of Kathleen Marie Jabkiewicz (the "Jemsek Clinic Records").

RESPONSE:

71.     No other records generated by the Jemsek Clinic or Dr. Jemsek exist in connection with the examination and treatment of Kathleen Marie Jabkiewicz other than the Jemsek Clinic Records at Bates Stamped pages 297 through 480.

RESPONSE:

72.     The Jemsek Clinic Records do not reference any prescription for morphine sulfate tablets.

RESPONSE:

73.     The Jemsek Clinic Records do not reference the Morphine Prescription.

RESPONSE:

74.     The failure to document the Morphine Prescription in any of the Jemsek Clinic Records constitutes a breach of the applicable standard of care.

RESPONSE:

75.     At no time during the course of Kathleen Marie Jabkiewicz's treatment by the Defendants were her prior medical records from the University of Michigan, Dr. James Riddle,

{W0188994-2}                                              14

or Dr. Schauble ever requested by any agent, nurse, employee, or physician acting within the scope and course of employment for the Jemsek Clinic.

RESPONSE:

 

76.     Prescribing sixty (60) thirty (30) milligram morphine sulfate tablets to Kathleen Marie Jabkiewicz constituted a breach by the Defendants of the applicable standards of care.

RESPONSE:

 

77.     On March 5, 2004, Kathleen Marie Jabkiewicz was opiate naïve.

RESPONSE:

 

78.     Kathleen Marie Jabkiewicz's death was proximately caused by the ingestion of two (2) of the thirty (30) milligram morphine sulfate immediate release tablets as identified on Bates Stamped page 555.

RESPONSE:

 

79.     Bates Stamped pages 16 through 113 are true, genuine, authentic, and accurate copies of the original medical records from Lake Norman Regional Medical Center concerning Kathleen Marie Jabkiewicz.

RESPONSE:

 

80.     Bates Stamped pages 16 through 113 are admissible into evidence without further authentication.

RESPONSE:

{W0188994-2 }                                    15

81.    Bates Stamped page 16 is a true, genuine, authentic, and accurate admission report for Kathleen Marie Jabkiewicz created by Dr. Jemsek (the "Admission Report").

RESPONSE:


82.    The Admission Report is a true, genuine, authentic, and accurate copy of the medical admission report created by Dr. Jemsek for Kathleen Marie Jabkiewicz and is admissible into evidence without further authentication.

RESPONSE:


83.    The reference to "debilitating atypical seizures" noted in paragraph #1 of the Admission Report of February 28, 2004 is, in fact, a description of non-epileptic psychogenic seizures.

RESPONSE:


84.    Kathleen Marie Jabkiewicz never had any epileptic seizures during the course of her medical care with the Defendants.

RESPONSE:


85.    During the course and scope of the Defendants' medical care of Kathleen Marie Jabkiewicz, she experienced non-epileptic pseudo-seizures.

RESPONSE:


{W0188994-2 }                                                  16

86.    The condition described in the Admission Report as "seizures" was actually psychogenic seizures.

RESPONSE:

87.    Dr. Jemsek is not a psychiatrist.

RESPONSE:

88.    Dr. Jemsek is not a neurologist.

RESPONSE:

89.    Dr. Jemsek is not a specialist in the field of seizure disorders.

RESPONSE:

90.    Dr. Jemsek is not a specialist in the field of treating pseudo or psychogenic seizures.

RESPONSE:

91.    Dr. Jemsek is not an anesthesiologist.

RESPONSE:

92.    Dr. Jemsek is not a specialist in the field of pain management.

RESPONSE:

93.    At no time during the course of Kathleen Marie Jabkiewicz's treatment with the Jemsek Clinic did any physician, nurse, agent, or employee consult with or associate a psychiatrist for the purposes of diagnosing her medical condition.

RESPONSE:

94.    At no time during the course of Kathleen Marie Jabkiewicz's treatment with the Jemsek Clinic did any physician, nurse, agent, or employee consult with or associate an anesthesiologist for the purposes of prescribing to her morphine sulfate.

RESPONSE:

95.    Bates Stamped pages 114 through 179 are true, genuine, authentic, and accurate copies of the original records of the Northeast Medical Center concerning Kathleen Marie Jabkiewicz for the date of February 25, 2004 and are admissible into evidence without further authentication.

RESPONSE:

96.    Bates Stamped pages 180 through 296 are true, genuine, authentic, and accurate copies of the original medical records of Northeast Medical Center concerning Kathleen Marie Jabkiewicz for the period from February 11, 2004 to February 14, 2004 and are admissible into evidence without further authentication.

RESPONSE:

97.    Bates Stamped pages 481 through 509 are true, genuine, authentic, and accurate copies of the original records of Dr. James Riddle concerning Kathleen Marie Jabkiewicz.

RESPONSE:

98.    The documents identified on Bates Stamped pages 481 through 509 are admissible into evidence without further authentication.

RESPONSE:

99.    The document identified on Bates Stamped pages 506 through 508 is a true, genuine, authentic, and accurate copy of the original Western Blot Lyme test performed on Kathleen Marie Jabkiewicz at the direction of University of Michigan agents and employees.

RESPONSE:

100.    The documents identified on Bates Stamped pages 506 through 508 are admissible into evidence without further authentication.

RESPONSE:

101.    The document identified on Bates Stamped pages 502 through 505 is a true, genuine, authentic, and accurate copy of Dr. Barbara Schauble's report concerning Kathleen Marie Jabkiewicz.

RESPONSE:

102.    Bates Stamped pages 502 through 505 are admissible into evidence without further authentication.

RESPONSE:

103.    On or about December 18, 2003, Dr. Jemsek examined and evaluated Kathleen Marie Jabkiewicz.

RESPONSE:

104.    On or about December 18, 2003, Dr. Jemsek was made aware that Kathleen Marie Jabkiewicz had been previously examined and evaluated at the University of Michigan.

RESPONSE:

105.    On or about December 18, 2003, Dr. Jemsek was made aware that the Lyme disease Western Blot test results conducted at the direction of Dr. Riddle on Kathleen Marie Jabkiewicz were negative.

RESPONSE:

106.    On or about December 18, 2003, Dr. Jemsek was made aware that the Lyme disease test results from The Mayo Clinic concerning Kathleen Marie Jabkiewicz were negative.

RESPONSE:

107.    On or about December 18, 2003, Dr. Jemsek was made aware that Dr. Riddle found little or no support for a diagnosis that Kathleen Marie Jabkiewicz had Lyme disease.

RESPONSE:

108.    After December 18, 2003, Kathleen Marie Jabkiewicz was not re-tested for Lyme disease by any physician, nurse, agent, or employee of the Jemsek Clinic.

RESPONSE:

{W0188994-2}                               20