27. The Defendants admit that on February 14, 2004, Dr. Mitchell discharged Kathleen Marie Jabkiewicz in stable condition, that his discharge diagnoses included both "paroxysmal events, nonepileptic, resolved" and "Lyme disease," and made a number of other findings and observations as set forth in his Discharge Summary. Except as stated, the Defendants deny the allegations of paragraph 27.

28. The Defendants admit that on February 25, 2004, Kathleen Marie Jabkiewicz presented at the Emergency Department at NorthEast Medical Center and was seen by an Emergency Physician, Dr. Kenneth Welch, that she had been followed by Dr. Mitchell since her discharge on February 14, 2004, that Dr. Welch's impression was pseudoseizure and that she was seen by other physicians during this time. Except as stated, the Defendants deny the allegations of paragraph 28.

29. The Defendants admit that on February 28, 2004, Kathleen Marie Jabkiewicz came to the Jemsek Clinic, that she was examined at the Jemsek Clinic, that she was then admitted to Lake Norman Regional Medical Center into the Intensive Care Unit for multiple issues as set forth in Dr. Jemsek's History and Physical, and that Dr. Jemsek was her admitting physician for this admission. Except as stated, the Defendants deny the allegations of paragraph 29.

30. The Defendants admit that Dr. Jemsek did not refer Kathleen Marie Jabkiewicz to a neurologist as she was being treated by neurologists for the episodes of seizures in 2003 and 2004 and that therefore there was no need for such a referral. Except as stated, the Defendants deny the allegations of paragraph 30.

31. The Defendants admit that Dr. Jemsek did not refer Kathleen Marie Jabkiewicz to a psychiatrist as she had been given a psychiatric evaluation during the February 2004 admission, that she had been seen by other psychological providers, and that therefore there was no need for such a referral. Except as stated, the Defendants deny the allegations of paragraph 31.

32. The Defendants admit that on March 5, 2004, Kathleen Marie Jabkiewicz was discharged from the Lake Norman Medical Center by Dr. Jemsek and that she was instructed to return to the Jemsek Clinic that day for the purpose of drawing a Depakote level. Except as stated, the Defendants deny the allegations of paragraph 32.

33. The Defendants admit that on March 5, 2004, Kathleen Marie Jabkiewicz came to the Jemsek Clinic and was infused with 200 mg of Remicade. Except as stated, the Defendants deny the allegations of paragraph 33.

34. The Defendants deny the allegations of paragraph 34.

35. The Defendants admit that Kathleen Marie Jabkiewicz was found dead on the morning of March 7, 2004 at approximately 9:30 a.m. and that the Supplemental Cause of Death stated that morphine poisoning was the cause of death. Except as stated, the Defendants deny the allegations of paragraph 35.

-5-

CHARLOTTE 449411v1

36. The Defendants deny the allegations of paragraph 36 and each subpart thereof.

37. The Defendants deny the allegations of paragraph 37 and each subpart thereof.

38. The Defendants deny the allegations of paragraph 38 and each subpart thereof.

39. The Defendants deny the allegations of paragraph 39.

40. The Defendants deny the allegations of paragraph 40.

41. The Defendants deny the allegations of paragraph 41.

42. The Defendants deny the allegations of paragraph 42.

43. The Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of paragraph 43.

44. The Defendants deny the allegations of paragraph 44.

### Second Defense to First Cause of Action: Contributory Negligence

1. The Defendants adopt by reference and incorporate their responses to the allegations of the First Cause of Action.

2. On or about March 6, 2004, and at the request of Kathleen Marie Jabkiewicz and her husband, the Defendants issued a prescription for oral morphine in 30 mg strength to be taken at the rate of 1 to 2 pills every 4 to 6 hours on a prn or as needed basis.

3. Following the death of Kathleen Marie Jabkiewicz, an autopsy was conducted by the Medical Examiner's Office.

4. During the course of that autopsy, toxicologic tests were run on Kathleen Marie Jabkiewicz's blood and tissues.

5. The results of these tests revealed elevated levels of morphine consistent with morphine poisoning or toxicity. A copy of the Report of Autopsy is attached to this Request for Statement of Amount of Monetary Relief and Answer as Exhibit 1.

6. As set forth in the Report of Autopsy, "[i]n discussion of this toxicology findings with the Toxicology Division of the Office of the Chief Medical Examiner, the decedent would have had to have taken more than the prescribed morphine at one time to achieve her blood and tissue levels."

7. These findings indicated that Kathleen Marie Jabkiewicz did not consume the morphine prescribed to her in the dosages and amounts prescribed.

- 6 -

CHARLOTTE 449411v1

8. If the Defendants, or any of them, are found to be negligent, which has been and is again denied, then Kathleen Marie Jabkiewicz was contributorily negligent in that:

    (a) She failed to follow the directions prescribed for the morphine medication;

    (b) She failed to read and understand the directions prescribed for the morphine medication;

    (c) She consumed more morphine than was prescribed; and

    (d) She otherwise failed to act as would a reasonable person under the same or similar circumstances.

9. These acts or omissions as set forth in this Defense proximately caused or contributed to the death of Kathleen Marie Jabkiewicz.

10. As a consequence of the contributory negligence of Kathleen Marie Jabkiewicz, the claims of her Estate and its heirs are barred and should be dismissed.

11. The Defendants reserve the right to plead and amend this Defense as discovery continues in this matter.

### Third Defense to First Cause of Action: Intervening Cause

1. The Defendants adopt by reference and incorporate their responses to the allegations of the First Cause of Action and the allegations of paragraphs 1 through 11 of the Second Cause of Action.

2. The consumption of excessive amounts of morphine in violation of the written directions provided to Kathleen Marie Jabkiewicz and her husband constitute an independent and intervening cause which was the proximate cause of her death.

## SECOND CAUSE OF ACTION

### First Defense to Second Cause of Action

45. The Defendants adopt by reference and incorporate their responses to the allegations of paragraphs 1 through 44 of the Complaint.

46. The Defendants deny the allegations of paragraph 46.

47. The Defendants deny the allegations of paragraph 47.

48. The Defendants deny the allegations of paragraph 48.

- 7 -

CHARLOTTE 449411v1

### Second Defense to Second Cause of Action

The Second Cause of Action, and each allegation thereof, fails to state a claim upon which relief may be granted; this Defense is interposed pursuant to G.S. §1A-1, Rule 12(b)(6).

## THIRD CAUSE OF ACTION

### First Defense to Third Cause of Action

49. The Defendants adopt by reference and incorporate their responses to the allegations of paragraphs 1 through 44 of the Complaint.

50. The Defendants deny the allegations of paragraph 50.

51. The Defendants deny the allegations of paragraph 51.

52. The Defendants deny the allegations of paragraph 52.

### Second Defense to Third Cause of Action

The Third Cause of Action, and each allegation thereof, fails to state a claim upon which relief may be granted; this Defense is interposed pursuant to G.S. §1A-1, Rule 12(b)(6).

## FOURTH CAUSE OF ACTION

### First Defense to Fourth Cause of Action

53. The Defendants adopt by reference and incorporate their responses to the allegations of paragraphs 1 through 44 of the Complaint.

54. The Defendants deny the allegations of paragraph 54.

55. The Defendants deny the allegations of paragraph 55.

### Second Defense to Fourth Cause of Action

The Fourth Cause of Action, and each allegation thereof, fails to state a claim upon which relief may be granted; this Defense is interposed pursuant to G.S. §1A-1, Rule 12(b)(6).

WHEREFORE, having fully answered the Complaint of the Plaintiffs, the Defendants pray that:

1. The Plaintiffs have and recover nothing;

2. If the Defendants are found to be negligent, which has been and is again denied, then the First Cause of Action be barred by the doctrine of contributory negligence;

3. The First Cause of Action be barred by the doctrine of intervening causation;

4. The Second, Third and Fourth Causes of Action be dismissed pursuant to G.S. §1A-1, Rule 12(b)(6);

5. The costs of this action be taxed against the Plaintiffs; and

6. This Court order such further relief as it deems just and appropriate.

This 29th day of August 2005.

Tricia Morvan Derr
State Bar No. 24438
*Attorney for Defendants*

OF COUNSEL:

WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
301 South College Street
One Wachovia Center, Suite 3500
Charlotte, NC 28202-6037
Telephone: 704-333-4998

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this the 29th day of August, 2005, the foregoing **REQUEST FOR STATEMENT OF AMOUNT OF MONETARY RELIEF AND ANSWER** was served on counsel for the Plaintiffs via U.S. Mail addressed as follows:

>Harold C. Spears
>Eric Allen Rogers
>Caudle & Spears, P.A.
>121 West Trade Street
>2600 Interstate Tower
>Charlotte, NC 28202

_____
Tricia Morvan Derr

STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
MECKLENBURG COUNTY      05 CvS 11118

JOSEPH STANLY JABKIEWICZ,
Administrator of the Estate of Kathleen
Marie Jabkiewicz, and JOSEPH STANLY
JABKIEWICZ, Individually and as
Guardian Ad Litem for Minors, MATTHEW
JOSEPH JABKIEWICZ and MICHAEL
STEVEN JABKIEWICZ,

     Plaintiffs,

vs.

JOSEPH G. JEMSEK, M.D., CHRISTIE
ROESKE, R.N.P., and THE JEMSEK
CLINIC, P.A.,

     Defendants.

**DEFENDANT THE JEMSEK CLINIC, P.A.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS**

NOW COMES a Defendant in the above-captioned matter, **THE JEMSEK CLINIC**, pursuant to G.S. §1A-1, Rules 26 and 36, and hereby objects and responds to Plaintiffs' First Request for Admissions as follows:

### General Objections

The Plaintiffs have tendered 145 Requests for Admission to this Defendant. Many of these Requests are redundant. Consequently, many of these Requests are not propounded in an effort to determine what facts are in dispute, nor are they tendered in an effort to determine whether the issues in this case may be narrowed for trial. Rather, the number, volume and subject matter of these Requests indicates that they are propounded for the purpose of tendering discovery that is overly burdensome and abusive. Consequently, the number and repetitive nature of these requests violate G.S. §1A-1, Rules 26 and 36. To the extent that any Response is deemed inadequate, this Defendant moves pursuant to G.S. §1A-1, Rule 26(c) for a Protective Order providing that this discovery not be had.

### Responses

1.      Kathleen Marie Jabkiewicz died on March 6, 2004 or March 7, 2004.

**RESPONSE: It is admitted that the Medical Examiner's report indicates that Kathleen Marie Jabkiewicz was last alleged to be alive on March 6, 2004 at 10:00**

p.m. and that her husband found her not breathing on the following morning at 9:30 a.m., and that, if this information is accurate and can be believed, Kathleen Marie Jabkiewicz died between the late evening of March 6 and the morning of March 7, 2004. Except as admitted, Request #1 is denied.

2. Kathleen Marie Jabkiewicz was forty-one (41) years old at the time of her death.

**RESPONSE:** It is admitted that in her Patient Registration Form at the Jemsek Clinic, Ms. Jabkiewicz gave a birth date of September 6, 1962, which would have made her forty-one (41) years old at the time of her death. Consequently, the Defendants admit the truth of the matters set forth in this Request on information and belief. Except as admitted, Request #2 is denied.

3. Kathleen Marie Jabkiewicz had two ten (10) year old children, Matthew Joseph Jabkiewicz and Michael Steven Jabkiewicz at the time of her death.

**RESPONSE:** These Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity as to the matters set forth in this Request.

4. Plaintiff Joseph Stanly Jabkiewicz and Kathleen Marie Jabkiewicz were married as husband and wife at the time of her death.

**RESPONSE:** It is admitted that Kathleen Marie Jabkiewicz's medical records indicate that she reported being married to Joe Jabkiewicz. Consequently, the Defendants admit the truth of the matters set forth in this Request on information and belief. Except as admitted, Request #4 is denied.

5. Defendant Joseph G. Jemsek, M.D. ("Dr. Jemsek") is the medical director for The Jemsek Clinic, P.A. (the "Jemsek Clinic").

**RESPONSE:** The Defendants admit the truth of the matters set forth in this Request.

6. Dr. Jemsek is a physician who is licensed to practice medicine in the State of North Carolina and who is board certified in internal medicine.

**RESPONSE:** The Defendants admit the truth of the matters set forth in this Request.

7. Dr. Jemsek holds himself out as a specialist in the field of infectious disease.

-2-

**RESPONSE:** It is admitted that Dr. Jemsek is Board Certified in the field of infectious disease and is thus a specialist in that field. Except as admitted, Request #7 is denied.

8. Dr. Jemsek holds himself out as a specialist in the treatment and care of individuals afflicted with Lyme disease.

**RESPONSE:** It is admitted that Dr. Jemsek has a special interest and expertise in the treatment and care of individuals afflicted with Lyme disease. Except as admitted, Request #8 is denied.

9. Dr. Jemsek held himself out to Kathleen Marie Jabkiewicz as a specialist in the treatment and care of Lyme disease.

**RESPONSE:** It is admitted that Dr. Jemsek has a special interest and expertise in the treatment and care of individuals afflicted with Lyme disease and that other physicians in the community, including Kathleen Marie Jabkiewicz's referring physician, were aware of his special interest and expertise in Lyme disease. Except as admitted, Request #9 is denied.

10. Christie Roeske, RNP ("Nurse Roeske") was an employee of the Jemsek Clinic on and before March 5, 2004.

**RESPONSE:** The Defendants admit the truth of the matters set forth in this Request.

11. At all times Nurse Roeske is referred to in the Complaint, Nurse Roeske was a duly authorized and acting employee or agent of the Jemsek Clinic.

**RESPONSE:** These Defendants admit that at all time relevant to the claim, and while performing her duties as a Certified Nurse Practitioner for the Jemsek Clinic, that Nurse Roeske was acting within the scope of her employment with the Jemsek Clinic. Except as admitted, Request #11 is denied.

12. At all times Nurse Roeske is referred to in the Complaint, Nurse Roeske was acting within the course and scope of her employment or agency with the Jemsek Clinic.

**RESPONSE:** These Defendants admit that at all time relevant to the claim, and while performing her duties as a Certified Nurse Practitioner for the Jemsek Clinic, that Nurse Roeske was acting within the scope of her employment with the Jemsek Clinic. Except as admitted, Request #12 is denied.

13. At all times referred to in the Complaint, the Jemsek Clinic was legally responsible for any acts or omissions of Nurse Roeske.

**RESPONSE: These Defendants admit that at all time relevant to the claim, and while performing her duties as a Certified Nurse Practitioner for the Jemsek Clinic, that Nurse Roeske was acting within the scope of her employment with the Jemsek Clinic and that, as to those duties, the Jemsek Clinic is legally responsible under the laws of the State of North Carolina under the doctrine of *respondeat superior*. Except as admitted, Request #13 is denied.**

14. At all times referred to in the Complaint, Dr. Jemsek was legally responsible for any acts or omissions of Nurse Roeske.

**RESPONSE: The Defendants admit that during the time periods encompassed by the Complaint, Nurse Roeske worked under the supervision of Dr. Jemsek and that Dr. Jemsek was responsible for those acts taken by Nurse Roeske at his direction. Except as admitted, Request #14 is denied.**

15. At all times referred to in the Complaint, Dr. Jemsek was legally responsible for any acts or omissions of any nurses and health care providers who were duly authorized and acting employees or agents of the Jemsek Clinic and who were acting within the course and scope of their employment or agency.

**RESPONSE: The Defendants admit that during the time periods encompassed by the Complaint, that nurses and other health care providers were employed by the Jemsek Clinic, that from time to time they worked under the direct supervision of Dr. Jemsek and that Dr. Jemsek would be responsible for those acts taken by them at his direction. Except as admitted, Request #15 is denied.**

16. At all times referred to in the Complaint, the Jemsek Clinic was legally responsible for any acts or omissions of any physicians who were duly authorized and acting employees or agents of the Jemsek Clinic and who were acting within the course and scope of their employment or agency.

**RESPONSE: The Defendants admit that at all times relevant to the Complaint Dr. Jemsek was acting within the course and scope of his employment with the Jemsek Clinic and that the Jemsek Clinic is legally responsible for his actions under the doctrine of *respondeat superior*. Except as admitted, Request #16 is denied.**

17. At all times referred to in the Complaint, Dr. Jemsek was a duly authorized and acting employee or agent of the Jemsek Clinic.

**RESPONSE: The Defendants admit that at all times relevant to the Complaint Dr. Jemsek was acting within the course and scope of his employment**

-4-

with the Jemsek Clinic and that the Jemsek Clinic is legally responsible for his actions under the doctrine of *respondeat superior.* Except as admitted, Request #17 is denied.

18. At all times referred to in the Complaint, Dr. Jemsek was acting within the course and scope of his employment or agency with the Jemsek Clinic.

**RESPONSE:** The Defendants admit that at all times relevant to the Complaint Dr. Jemsek was acting within the course and scope of his employment with the Jemsek Clinic. Except as admitted, Request #18 is denied.

19. At all times referred to in the Complaint, the Jemsek Clinic was legally responsible for any acts or omissions of Dr. Jemsek.

**RESPONSE:** The Defendants admit that at all times relevant to the Complaint Dr. Jemsek was acting within the course and scope of his employment with the Jemsek Clinic and that the Jemsek Clinic is legally responsible for his actions under the doctrine of *respondeat superior.* Except as admitted, Request #19 is denied.

20. The autopsy report attached hereto and marked Bates Stamped pages 1 through 13 (the "Autopsy Report") is a true, genuine, authentic, and accurate copy of the original autopsy report prepared by the Office of the Medical Examiner for Mecklenburg County, North Carolina, concerning the death of Kathleen Marie Jabkiewicz.

**RESPONSE:** There were no attachments to the Request. However, it is admitted that Bates Stamped pages 1 through 13 appear to be a copy of the autopsy report prepared by the Office of the Medical Examiner concerning the death of Kathleen Marie Jabkiewicz. These Defendants have not had the opportunity to inspect the original report and therefore cannot admit the authenticity of the copies. These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #20 is denied.

21. The Autopsy Report is admissible into evidence without further authentication.

**RESPONSE: Denied.**

22. The death certificate attached hereto and marked Bates Stamped pages 14 and 15 (the "Death Certificate") is a true, genuine, authentic, and accurate copy of the original death certificate for Kathleen Marie Jabkiewicz.

- 5 -

RESPONSE: There were no attachments to the Request. However, it is admitted that Bates Stamped pages 14 through 15 appear to be a copy of the death certificate for Ms. Jabkiewicz. These Defendants have not had the opportunity to inspect the original report and therefore cannot admit the authenticity of the copies. These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #22 is denied.

23. The Death Certificate is admissible into evidence without further authentication.

RESPONSE: Denied.

24. At all times referred to in the Complaint, Dr. Kenneth S. Snell ("Dr. Snell") was a physician who was duly licensed to practice medicine in the State of North Carolina.

RESPONSE: It is admitted that according to the North Carolina Medical Board Dr. Snell was a physician licensed to practice medicine and specializing in the field of pathology from June 22, 2001 through present. Except as admitted, Request #24 is denied.

25. At all times referred to in the Complaint, Dr. Snell was a specialist in the field of pathology.

RESPONSE: It is admitted that Dr. Snell is listed as a physician with a specialty in pathology according to the North Carolina Medical Board. Except as admitted, Request #25 is denied.

26. At all times referred to in the Complaint, Dr. Snell was acting within the course and scope of his official duties as a pathologist for the Mecklenburg County Office of the Medical Examiner.

RESPONSE: It is admitted that the report of autopsy examination appears on letterhead from the Office of the Medical Examiner in Charlotte, North Carolina and that Dr. Snell is listed on the report as the pathologist who prepared the autopsy examination. Except as admitted, Request #26 is denied.

27. Dr. Snell performed the autopsy on Kathleen Marie Jabkiewicz.

RESPONSE: It is admitted that a signature purporting to be that of Dr. Snell's appears on the report of autopsy examination for Kathleen Marie Jabkiewicz and indicates that Dr. Snell is the reporting pathologist. However, the autopsy report and death certificates further indicate that other individuals at the