Office of the Chief Medical Examiner were involved in the determination of the cause of death of Kathleen Marie Jabkiewicz. Except as admitted, Request #27 is denied.

28.    Dr. Snell prepared the Autopsy Report of Kathleen Marie Jabkiewicz.

**RESPONSE:**  **It is admitted that a signature purporting to be that of Dr. Snell's appears on the report of autopsy examination for Kathleen Marie Jabkiewicz and suggests that Dr. Snell is the reporting pathologist. However, the autopsy report and death certificates further indicate that other individuals at the Office of the Chief Medical Examiner were involved in the determination of the cause of death of Kathleen Marie Jabkiewicz Except as admitted, Request #28 is denied.**

29.    Based on his autopsy of Kathleen Marie Jabkiewicz, Dr. Snell found that the cause of death was "morphine toxicity complications."

**RESPONSE:**  **It is admitted that the Report of Autopsy Examination lists Mrs. Jabkiewicz' cause of death as "morphine toxicity." Except as admitted, Request #29 is denied.**

30.    The findings and conclusions of Dr. Snell as set forth in the Autopsy Report are true, correct, and accurate.

**RESPONSE:**  **It is admitted that the report of autopsy examination purports to contain a summary of Dr. Snell's findings and conclusions during the course of his autopsy examination. Except as admitted, these Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the matters set forth in this Request.**

31.    The cause of death of Kathleen Marie Jabkiewicz was morphine toxicity complications.

**RESPONSE:**  **It is admitted that the report of autopsy examination lists Mrs. Jabkiewicz' cause of death as "morphine toxicity" and that the Report of Autopsy further states that "the decedent would have had to have taken more than the prescribed morphine at one time to achieve her blood and tissue levels." Except as admitted, these Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the matters set forth in this Request.**

32.    Kathleen Marie Jabkiewicz died as a direct and proximate result of morphine toxicity complications.

**RESPONSE:**  **It is admitted that the report of autopsy examination lists Mrs. Jabkiewicz' cause of death as "morphine toxicity" and that the Report of Autopsy further states that "the decedent would have had to have taken more than the**

-7-

CHARLOTTE 440176v1

prescribed morphine at one time to achieve her blood and tissue levels." Except as admitted, the Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of this Request.

33.     The toxicology report attached hereto and marked Bates Stamped pages 10 and 11 (the "Toxicology Report") is a true and accurate copy of the original toxicology report prepared by the Office of the Chief Medical Examiner in Chapel Hill, North Carolina.

RESPONSE:   There were no attachments to the Request.  However, it is admitted that Bates Stamped pages 10 and 11 appear to be a copy of the Toxicology Report prepared by the Office of the Chief Medical Examiner in Chapel Hill, North Carolina.  These Defendants have not had the opportunity to inspect the original report and therefore cannot admit the authenticity of the copies. These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #33 is denied.

34.     The findings contained in the Toxicology Report are true, correct, and accurate.

RESPONSE:  It is admitted that the Toxicology Report purports to contain the findings made by the Office of the Chief Medical Examiner on decedent Kathleen Jabkiewicz.  Except as admitted, the Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the matters set forth in this Request.

35.     The Toxicology Report is admissible into evidence without further authentication.

RESPONSE: Denied.

36.     On or about March 5, 2004, Dr. Jemsek prescribed sixty (60) thirty (30) milligram morphine sulfate tablets to Kathleen Marie Jabkiewicz.

RESPONSE:   It is admitted that on or about March 6, 2004, Christie F. Roeske, FNP, CS, prescribed MSIR, 30 mg., #60, 1-2 by mouth every 4-6 hours as needed for pain to Kathleen Marie Jabkiewicz.  It is further admitted that Nurse Roeske was supervised by Dr. Jemsek at the time the prescription was given. Except as admitted, Request #36 is denied.

37.     On or about March 5, 2004, Nurse Roeske wrote a prescription for sixty (60) thirty (30) milligram morphine sulfate tablets to Kathleen Marie Jabkiewicz.

- 8 -

RESPONSE: It is admitted that on or about March 6, 2004, Christie F. Roeske, FNP, CS, prescribed MSIR, 30 mg., #60, 1-2 by mouth every 4-6 hours as needed for pain to Kathleen Marie Jabkiewicz. Except as admitted, Request #37 is denied.

38.    The morphine sulfate prescription attached hereto and marked as Bates Stamped page 555 (the "Morphine Prescription") is a true, genuine, and accurate copy of the original prescription written by Nurse Roeske to Kathleen Marie Jabkiewicz.

RESPONSE: There was no attachment to the Request. However, it is admitted that a portion of the page marked as Bates Stamped page 555 appears to be a prescription written by Nurse Roeske to Kathleen Marie Jabkiewicz. Except as admitted, Request #38 is denied.

39.    The Morphine Prescription calls for a dosage of one (1) to two (2) thirty (30) milligram tablets of morphine sulfate every four (4) to six (6) hours as needed for pain.

RESPONSE: It is admitted that on or about March 6, 2004, Christie F. Roeske, FNP, CS, prescribed MSIR, 30 mg., #60, 1-2 by mouth every 4-6 hours as needed for pain to Kathleen Marie Jabkiewicz. Except as admitted, Request #39 is denied.

40.    Nurse Roeske's DEA number is MR0427953.

RESPONSE: The Defendants admit the truth of the matters set forth in this Request.

41.    The handwritten notations appearing on the Morphine Prescription are the handwriting of Nurse Roeske.

RESPONSE: It is admitted that the handwriting on the prescription stating "MSIR 30 mg, #60, 1-2 PO q 4-6 hrs, PRN pain" belongs to Nurse Roeske. Except as admitted, Request #41 is denied.

42.    The handwriting on the Morphine Prescription stating "Morphine Sulfate Immediate Release. Take 1 to 2 tablets by mouth every 4 to 6 hours as needed for pain" was written by Nurse Roeske.

RESPONSE: It is admitted that the handwriting on the prescription stating "MSIR 30 mg, #60, 1-2 PO q 4-6 hrs, PRN pain" belongs to Nurse Roeske. Except as admitted, Request #42 is denied.

43.    The Morphine Prescription was prescribed by Dr. Jemsek.

- 9 -

**RESPONSE:** It is admitted that Dr. Jemsek directly supervised Nurse Roeske. Except as admitted, Request #43 is denied.

44.    The Morphine Prescription was issued at the direction of Dr. Jemsek.

**RESPONSE:** It is admitted that Dr. Jemsek directly supervised Nurse Roeske. Except as admitted, Request #44 is denied.

45.    Dr. Jemsek directed Nurse Roeske to issue a prescription for sixty (60) thirty (30) milligram morphine sulfate tablets to Kathleen Marie Jabkiewicz.

**RESPONSE:** It is admitted that Dr. Jemsek directly supervised Nurse Roeske. Except as admitted, Request #45 is denied.

46.    On March 6, 2004, the Walgreens pharmacy located at 1671 1 Birkdale Commons Parkway, Huntersville, North Carolina ("Walgreens") filled the Morphine Prescription for Kathleen Marie Jabkiewicz.

**RESPONSE:** It is admitted that the documents Bates stamped 555-566 purport to be records from a Walgreen's pharmacy showing that a prescription was filled for morphine sulfate for Kathleen Marie Jabkiewicz on March 6, 2004. These Defendants are without knowledge or information sufficient to form a belief as to the specific location of the Walgreen's pharmacy involved.    These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #46 is denied.

47.    On March 6, 2004, sixty (60) thirty (30) milligram morphine sulfate immediate release tablets were obtained by Kathleen Marie Jabkiewicz pursuant to the Morphine Prescription (the "Prescribed Morphine Tablets").

**RESPONSE:** It is admitted that the documents Bates stamped 555-566 purport to be records from a Walgreen's pharmacy showing that a prescription was filled for morphine sulfate for Kathleen Marie Jabkiewicz on March 6, 2004. These Defendants are without knowledge or information sufficient to form a belief as to the specific location of the Walgreen's pharmacy involved.    Except as admitted, Request #46 is denied.

48.    Kathleen Marie Jabkiewicz ingested two of the Prescribed Morphine Tablets on March 6, 2004 or March 7, 2004.

**RESPONSE:** It is admitted that Kathleen Marie Jabkiewicz ingested morphine tables on March 6, 2004. and/or March 7, 2004 and that the Report of Autopsy states that "the decedent would have had to have taken more than the prescribed morphine at one time to achieve her blood and tissue levels." Except as admitted, Request #48 is denied.

- 10 -

49.    Kathleen Marie Jabkiewicz's ingestion of two of the Prescribed Morphine Tablets was consistent with the directions on the Morphine Prescription.

**RESPONSE:    It is admitted that the prescription indicated that Mrs. Jabkiewicz could take up to 2 morphine tablets every 4-6 hours as needed for pain, that Kathleen Marie Jabkiewicz ingested morphine tablets on March 6 and/or March 7, 2004, and that the Report of Autopsy states that "the decedent would have had to have taken more than the prescribed morphine at one time to achieve her blood and tissue levels." Except as admitted Request #49 is denied.**

50.    Kathleen Marie Jabkiewicz's ingestion of two of the Prescribed Morphine Tablets was the only morphine that Kathleen Marie Jabkiewicz ingested or consumed on March 6, 2004 or March 7, 2004.

**RESPONSE: Denied.**

51.    The two Prescribed Morphine Tablets ingested by Kathleen Marie Jabkiewicz on March 6, 2004 or March 7, 2004 are the morphine tablets responsible for Kathleen Marie Jabkiewicz's death.

**RESPONSE: Denied.**

52.    The two Prescribed Morphine Tablets ingested by Kathleen Marie Jabkiewicz on March 6, 2004 or March 7, 2004 are the morphine tablets that caused Kathleen Marie Jabkiewicz to die from morphine toxicity complications.

**RESPONSE: Denied.**

53.    Kathleen Marie Jabkiewicz died as a direct and proximate result of the morphine prescribed and ingested pursuant to the Morphine Prescription.

**RESPONSE: Denied.**

54.    At all times referred to in the Complaint, Dr. Hugh Hinson ("Dr. Hinson") was a physician who was duly licensed to practice medicine in the State of North Carolina.

**RESPONSE:    These defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the matters set forth in this Request. Defendants have made a reasonable inquiry and the information readily obtainable by them is insufficient to enable them to admit or deny this request.**

55.    At all times referred to in the Complaint, Dr. Hinson was acting within the course and scope of his official duties as a Medical Examiner of the North Carolina Department of Health and Human Services, Office of the Chief Medical Examiner.

- 11 -

**RESPONSE:** It is admitted that a signature bearing the name Hugh E. Hinson, M.E., appears on the narrative summary of circumstances surrounding death at Bates Stamped page 13. Except as admitted, Request #55 is denied.

56.    The narrative summary on Bates Stamped page 13 was prepared by Dr. Hinson in his official capacity as a medical examiner.

**RESPONSE:** It is admitted that a signature bearing the name Hugh E. Henson, M.E., appears on the narrative summary of circumstances surrounding death at Bates Stamped page 13. Except as admitted, Request #56 is denied.

57.    The narrative summary identified on Bates Stamped page 13, prepared by Dr. Hinson, is a true, genuine, authentic, and accurate copy of the original narrative summary and is admissible into evidence without further authentication.

**RESPONSE:** It is admitted that the document appearing on Bates Stamped page 13 appears to be a copy of the original narrative summary of circumstances surrounding death signed by Hugh E. Hinson, M.E. These Defendants have not had the opportunity to inspect the original report and therefore cannot admit the authenticity of the copies. These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #57 is denied.

58.    Bates Stamped page 15, identified as a Supplemental Report of Cause of Death, is a true, genuine, authentic, and accurate copy of the original Supplemental Report of Cause of Death for Kathleen Marie Jabkiewicz.

**RESPONSE:** It is admitted that the document appearing as Bates Stamped page 15 appears to be a copy of the Supplemental Report of Cause of Death for Kathleen Marie Jabkiewicz. These Defendants have not had the opportunity to inspect the original report and therefore cannot admit the authenticity of the copies. These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #58 is denied.

59.    The immediate cause of Kathleen Marie Jabkiewicz's death as identified on the Supplemental Report of Cause of Death identified on Bates Stamped page 15, line A, is morphine poisoning.

**RESPONSE:** It is admitted that the immediate cause of death identified on the Supplemental Report of Cause of Death appearing on Bates Stamped page 15, line A, is "morphine poisoning." Except as admitted, Request #59 is denied.

- 12 -

60.    Bates Stamped page 15, identified as Supplemental Report of Cause of Death for Kathleen Marie Jabkiewicz, is admissible into evidence without further authentication.

**RESPONSE: Denied.**

61.    Kathleen Marie Jabkiewicz died as a result of morphine poisoning.

**RESPONSE: It is admitted that the Supplemental Report of Cause of Death indicates that Mrs. Jabkiewicz died as a result of morphine poisoning. Except as admitted, these Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the matters set forth in this Request.**

62.    Kathleen Marie Jabkiewicz died as a result of morphine poisoning due to her ingestion of two of the Prescribed Morphine Tablets.

**RESPONSE: Denied.**

63.    Kathleen Marie Jabkiewicz suffered acute respiratory failure secondary to morphine poisoning.

**RESPONSE:    It is admitted that the Report of Autopsy Examination purportedly prepared by Dr. Snell contains a sentence stating, "[t]he complications of morphine toxicity are most likely due to respiratory drive depression that has  resulted in hypoxic/ischemic changes in the heart and brain." Except as admitted, Request #63 is denied.**

64.    Nurse Roeske negligently prescribed or issued the Morphine Prescription to Kathleen Marie Jabkiewicz.

**RESPONSE: Denied.**

65.    Nurse Roeske breached the standard of care among members of her same health care profession with similar training and experience in the same or similar communities when she prescribed or issued the Morphine Prescription.

**RESPONSE: Denied.**

66.    Dr. Jemsek negligently failed to supervise Nurse Roeske at the time of the writing of the Morphine Prescription.

**RESPONSE: Denied.**

67.    Dr. Jemsek negligently prescribed sixty (60) thirty (30) milligram morphine sulfate tablets to Kathleen Marie Jabkiewicz as identified on Bates Stamped page 555.

- 13 -

CHARLOTTE 440176v1

<u>RESPONSE</u>: **Denied.**

68.    Dr. Jemsek breached the standard of care among members of his same medical profession with similar training and experience in the same or similar circumstances when he prescribed or directed Nurse Roeske to issue the Morphine Prescription.

<u>RESPONSE</u>: **Denied.**

69.    Dr. Jemsek breached the standard of care among members of his same medical profession with similar training and experience in the same or similar circumstances when he failed to properly supervise Nurse Roeske in connection with the issuance of the Morphine Prescription.

<u>RESPONSE</u>: **Denied.**

70.    Bates Stamped pages 297 through 480 represent a complete copy of all of the medical records from the Jemsek Clinic in connection with the examination and treatment of Kathleen Marie Jabkiewicz (the "Jemsek Clinic Records").

<u>RESPONSE</u>: **Denied.**

71.    No other records generated by the Jemsek Clinic or Dr. Jemsek exist in connection with the examination and treatment of Kathleen Marie Jabkiewicz other than the Jemsek Clinic Records at Bates Stamped pages 297 through 480.

<u>RESPONSE</u>: **Denied.**

72.    The Jemsek Clinic Records do not reference any prescription for morphine sulfate tablets.

<u>RESPONSE</u>: **Denied.**

73.    The Jemsek Clinic Records do not reference the Morphine Prescription.

<u>RESPONSE</u>: **Denied.**

74.    The failure to document the Morphine Prescription in any of the Jemsek Clinic Records constitutes a breach of the applicable standard of care.

<u>RESPONSE</u>: **Denied.**

75.    At no time during the course of Kathleen Marie Jabkiewicz's treatment by the Defendants were her prior medical records from the University of Michigan, Dr. James Riddle, or Dr. Schauble ever requested by any agent, nurse, employee, or

- 14 -

physician acting within the scope and course of employment for the Jemsek Clinic.

**RESPONSE: It is admitted that from the time that Mrs. Jabkiewicz returned from Michigan and saw Dr. Jemsek on December 18, 2003, through the date of her death on March 7, 2004, no employee or agent of the Jemsek Clinic requested her medical records. The Defendants further admit that the medical records from the Jemsek Clinic were never requested by the University of Michigan, Dr. James Riddle or Dr. Schauble, their agents, nurses or employees and that the standard of care applicable to Dr. Jemsek did not require such a request. Except as admitted, Request #75 is denied.**

76.     Prescribing sixty (60) thirty (30) milligram morphine sulfate tablets to Kathleen Marie Jabkiewicz constituted a breach by the Defendants of the applicable standards of care.

**RESPONSE: Denied.**

77.     On March 5, 2004, Kathleen Marie Jabkiewicz was opiate naïve.

**RESPONSE: Denied.**

78.     Kathleen Marie Jabkiewicz's death was proximately caused by the ingestion of two (2) of the thirty (30) milligram morphine sulfate immediate release tablets as identified on Bates Stamped page 555.

**RESPONSE: Denied.**

79.     Bates Stamped pages 16 through 113 are true, genuine, authentic, and accurate copies of the original medical records from Lake Norman Regional Medical Center concerning Kathleen Marie Jabkiewicz.

**RESPONSE: It is admitted that Bates Stamped pages 16-113 appear to be copies of medical records from Lake Norman Regional Medical Center concerning Kathleen Marie Jabkiewicz. These defendants have not had the opportunity to inspect the original medical records from Lake Norman Regional Medical Center concerning Kathleen Marie Jabkiewicz and therefore cannot admit to the authenticity of the copies. These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #79 is denied.**

80.     Bates Stamped pages 16 through 113 are admissible into evidence without further authentication.

**RESPONSE: Denied.**

- 15 -

81.     Bates Stamped page 16 is a true, genuine, authentic, and accurate admission report for Kathleen Marie Jabkiewicz created by Dr. Jemsek (the "Admission Report").

**RESPONSE:  It is admitted that Bates Stamped page 16 is a History and Physical prepared by Dr. Jemsek on February 28, 2004, during Mrs. Jabkiewicz' admission to Lake Norman Regional Medical Center.  Except as admitted, Request #81 is denied.**

82.     The Admission Report is a true, genuine, authentic, and accurate copy of the medical admission report created by Dr. Jemsek for Kathleen Marie Jabkiewicz and is admissible into evidence without further authentication.

**RESPONSE:  It is admitted that the document appearing at Bates Stamped pages 16-19 appears to be an accurate copy of the history and physical prepared by Dr. Jemsek during Kathleen Jabkiewicz' admission to Lake Norman Regional Medical Center on or about February 28, 2004.  These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #82 is denied.**

83.     The reference to "debilitating atypical seizures" noted in paragraph #1 of the Admission Report of February 28, 2004 is, in fact, a description of non-epileptic psychogenic seizures.

**RESPONSE:  The Defendants admit that the debilitating atypical seizures that Kathleen Marie Jabkiewicz was suffering from on February 28, 2004, were non-epileptic as determined by electroencephalogram.  Except as admitted, Request #83 is denied.**

84.     Kathleen Marie Jabkiewicz never had any epileptic seizures during the course of her medical care with the Defendants.

**RESPONSE:  The Defendants admit that when Kathleen Marie Jabkiewicz was found to be suffering from seizures, she was evaluated and treated by a neurologist who determined that the seizures were not epileptic in origin based upon the findings of electroencephalogram and that the neurologist and other health care professionals, including the Defendants, provided care and treatment for Kathleen Marie Jabkiewicz. Except as admitted, Request #84 is denied.**

85.     During the course and scope of the Defendants' medical care of Kathleen Marie Jabkiewicz, she experienced non-epileptic pseudo-seizures.

**RESPONSE: The Defendants admit that the seizures that Kathleen Marie Jabkiewicz was suffering from on February 28, 2004, were non-epileptic as**

- 16 -

CHARLOTTE 440176v1

determined by electroencephalogram.   Except as admitted, Request #85 is denied.

86.   The condition described in the Admission Report as "seizures" was actually psychogenic seizures.

**RESPONSE:** The Defendants admit that the debilitating atypical seizures that Kathleen Marie Jabkiewicz was suffering from were non-epileptic as determined by electroencephalogram.  Except as admitted, Request #86 is denied.

87.   Dr. Jemsek is not a psychiatrist.

**RESPONSE:** The Defendants admit that Dr. Jemsek is not a psychiatrist; however, to the extent that this Interrogatory implies that physicians who are double-board certified in Internal Medicine and Infectious Diseases and engage in the type of medical practice conducted by the Defendants do not treat forms psychiatric disorders or address some psychiatric issues, the Defendants deny the truth of the matters set forth in this Request.  Except as admitted, Request #87 is denied.

88.   Dr. Jemsek is not a neurologist.

**RESPONSE:** The Defendants admit that Dr. Jemsek is not Board-certified in the medical specialty of neurology; however, to the extent that this Interrogatory implies that physicians who are double-board certified in Internal Medicine and Infectious Diseases and engage in the type of medical practice conducted by the Defendants do not evaluate patients for neurologic conditions, do not treat forms of neurologic disorders or address some neurologic issues, the Defendants deny the truth of the matters set forth in this Request.  Except as admitted, Request #88 is denied.

89.   Dr. Jemsek is not a specialist in the field of seizure disorders.

**RESPONSE:** The Defendants admit that the diagnosis, care and treatment of seizure disorders is often undertaken by specialists in Internal Medicine and that on many other occasions such specialists work in conjunction with neurologists or even neurosurgeons in the care and treatment of seizure disorders.  The Defendants are unaware of any recognized subspecialty of "seizure disorders" that is a recognized field of specialty by the American Board of Specialization.  Except as admitted, Request #88 is denied.

90.   Dr. Jemsek is not a specialist in the field of treating pseudo or psychogenic seizures.

- 17 -

**RESPONSE:** The Defendants admit that the diagnosis, care and treatment of seizure disorders is often undertaken by specialists in Internal Medicine and that on many other occasions such specialists work in conjunction with neurologists or even neurosurgeons in the care and treatment of seizure disorders. The Defendants are unaware of any recognized subspecialty of "pseudo or psychogenic seizure disorders" that is a recognized field of specialty by the American Board of Specialization. Except as admitted, Request #90 is denied.

91. Dr. Jemsek is not an anesthesiologist.

**RESPONSE:** The Defendants object to the relevancy of this Request for Admission. Subject to this objections, the Defendants admit that Dr. Jemsek is not board certified in the subspecialty of anesthesiology. However, Dr. Jemsek is board certified in the fields of internal medicine and infectious disease and these subspecialties include within them elements of anesthesia and/or pain management. Except as admitted, Request #91 is denied.

92. Dr. Jemsek is not a specialist in the field of pain management.

**RESPONSE:** It is admitted that Dr. Jemsek is not board certified in the subspecialty of pain management. However, Dr. Jemsek is board certified in the fields of internal medicine and infectious disease and these subspecialties include within them elements of anesthesia and/or pain management. Except as admitted, Request #92 is denied.

93. At no time during the course of Kathleen Marie Jabkiewicz's treatment with the Jemsek Clinic did any physician, nurse, agent, or employee consult with or associate a psychiatrist for the purposes of diagnosing her medical condition.

**RESPONSE: Denied.**

94. At no time during the course of Kathleen Marie Jabkiewicz's treatment with the Jemsek Clinic did any physician, nurse, agent, or employee consult with or associate an anesthesiologist for the purposes of prescribing to her morphine sulfate.

**RESPONSE:** These Defendants object to the relevance of this Interrogatory. Subject to this objection, the Defendants admit that they did not consult with an anesthesiologist for the purpose of prescribing morphine sulfate at any time during their care and treatment of her, nor did the Emergency Physician who prescribed her morphine sulfate consult with an anesthesiologist prior to treating her. The Defendants deny any implication that the standards of practice for a physician with Dr. Jemsak's practice who is double-board certified in Internal Medicine and Infectious Diseases to consult with an anesthesiologist prior to the administration of morphine for pain relief. Except as admitted, Request #94 is denied.

- 18 -

CHARLOTTE 440176v1