95.   Bates Stamped pages 114 through 179 are true, genuine, authentic, and accurate copies of the original records of the Northeast Medical Center concerning Kathleen Marie Jabkiewicz for the date of February 25, 2004 and are admissible into evidence without further authentication.

**RESPONSE: It is admitted that Bates Stamped pages 114-179 appear to be a copy of the medical records from Northeast Medical Center concerning Kathleen Marie Jabkiewicz' admission from February 25, 2004 through March 5, 2004. These Defendants have not had the opportunity to inspect the original records and therefore cannot admit the authenticity of the copies. These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #95 is denied.**

96.   Bates Stamped pages 180 through 296 are true, genuine, authentic, and accurate copies of the original medical records of Northeast Medical Center concerning Kathleen Marie Jabkiewicz for the period from February 11, 2004 to February 14, 2004 and are admissible into evidence without further authentication.

**RESPONSE: It is admitted that Bates Stamped pages 180-296 appear to be a copy of the medical records from Northeast Medical Center concerning Kathleen Marie Jabkiewicz' admission from February 25, 2004 through March 5, 2004. These Defendants have not had the opportunity to inspect the original records and therefore cannot admit the authenticity of the copies. These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #96 is denied.**

97.   Bates Stamped pages 481 through 509 are true, genuine, authentic, and accurate copies of the original records of Dr. James Riddle concerning Kathleen Marie Jabkiewicz.

**RESPONSE: It is admitted that Bates Stamped pages 481-509 appear to be a copy of the medical records from Northeast Medical Center concerning Kathleen Marie Jabkiewicz' admission from February 25, 2004 through March 5, 2004. These Defendants have not had the opportunity to inspect the original records and therefore cannot admit the authenticity of the copies. These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #97 is denied.**

98.   The documents identified on Bates Stamped pages 481 through 509 are admissible into evidence without further authentication.

- 19 -

**RESPONSE: Denied.**

99.   The document identified on Bates Stamped pages 506 through 508 is a true, genuine, authentic, and accurate copy of the original Western Blot Lyme test performed on Kathleen Marie Jabkiewicz at the direction of University of Michigan agents and employees.

**RESPONSE: It is admitted that the document identified on Bates Stamped pages 506-508 appears to be a copy of a Western Blot Lyme test performed on Kathleen Marie Jabkiewicz.   The Defendants deny any implication that this Western Blot Lyme Test is more accurate or reliable than the prior positive test for Lyme Disease obtained by Dr. Jemsek during his initial consultation with Kathleen Marie Jabkiewicz.  These Defendants have not had the opportunity to inspect the original report and therefore cannot admit the authenticity of the copies. These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery. Except as admitted, Request #99 is denied.**

100.   The documents identified on Bates Stamped pages 506 through 508 are admissible into evidence without further authentication.

**RESPONSE: Denied.**

101.   The document identified on Bates Stamped pages 502 through 505 is a true, genuine, authentic, and accurate copy of Dr. Barbara Schauble's report concerning Kathleen Marie Jabkiewicz.

**RESPONSE: It is admitted that the document identified on Bates Stamped pages 502-505 appears to be a copy of a report concerning Kathleen Marie Jabkiewicz prepared by Angela K. Morris, M.D. and signed off on by Barbara Schauble, M.D.  These Defendants have not had the opportunity to inspect the original report and therefore cannot admit the authenticity of the copies.  These Defendants will enter into an appropriate stipulation with the Plaintiffs concerning the authenticity and admissibility of all medical records and other documents at the completion of discovery.  Except as admitted, Request #101 is denied.**

102.   Bates Stamped pages 502 through 505 are admissible into evidence without further authentication.

**RESPONSE: Denied.**

103.   On or about December 18, 2003, Dr. Jemsek examined and evaluated Kathleen Marie Jabkiewicz.

RESPONSE: It is admitted that Dr. Jemsek saw Kathleen Marie Jabkiewicz on December 18, 2003, at her request, and that he evaluated her as reflected in his report prepared on that day. The Defendants deny any implication that this was the first time that Dr. Jemsek had seen or evaluated Kathleen Marie Jabkiewicz. Except as admitted, Request #103 is denied.

104.   On or about December 18, 2003, Dr. Jemsek was made aware that Kathleen Marie Jabkiewicz had been previously examined and evaluated at the University of Michigan.

RESPONSE: It is admitted that on December 18, 2003, when Dr. Jemsek evaluated Kathleen Marie Jabkiewicz at her request, that she related to Dr. Jemsek that she found little support at the "University of Michigan and elsewhere" and that she did find a physician in Saginaw who agreed that she had Lyme disease. It is further admitted that Dr. Jemsek was unaware of the prior examination and evaluation because the physicians and health-care providers at the University of Michigan did not request the prior medical records for Kathleen Marie Jabkiewicz, the prior testing for her, any of her treatment records, or in any way seek to obtain a prior medical history for her from Dr. Jemsek or any of the health-care providers who had treated her in North Carolina. Except as admitted, Request #104 is denied.

105.   On or about December 18, 2003, Dr. Jemsek was made aware that the Lyme disease Western Blot test results conducted at the direction of Dr. Riddle on Kathleen Marie Jabkiewicz were negative.

RESPONSE: Denied.

106.   On or about December 18, 2003, Dr. Jemsek was made aware that the Lyme disease test results from The Mayo Clinic concerning Kathleen Marie Jabkiewicz were negative.

RESPONSE: Denied.

107.   On or about December 18, 2003, Dr. Jemsek was made aware that Dr. Riddle found little or no support for a diagnosis that Kathleen Marie Jabkiewicz had Lyme disease.

RESPONSE: The Defendants admit that, in the Clinic Note of December 18, 2003, Dr. Jemsek wrote that: "Predictably, though, at the University of Michigan and elsewhere, there was little or no support for her diagnosis. She did eventually find a physician in Saganaw, Dr. Ledtke, who agreed that she had Lyme disease and who placed her on Malranone daily and unknown doses of Zithromax daily for the period of 10/21 to 12/5 or so. She also received B12 IM." The Defendants further admit that it appears that the physicians at the University of Michigan were unable to determine a diagnosis or cause for Kathleen Marie

- 21 -

Jabkiewicz's physical symptoms, problems, and complaints.  Except as admitted,
Request #107 is denied.

108.   After December 18, 2003, Kathleen Marie Jabkiewicz was not re-tested for
Lyme disease by any physician, nurse, agent, or employee of the Jemsek Clinic.

**RESPONSE:  The Defendants admit that after December 18, 2003, Dr.
Jemsek did not retest Ms. Jabkiewicz for Lyme disease because she had already
had a positive test on March 21, 2002, and had improved with treatment for Lyme
disease.  The Defendants deny any implication that the standards of practice
required re-testing on or after December 18, 2003.  Except as admitted Request
#108 is denied.**

109.   Dr. Jemsek did not request that another Western Blot test be administered
to Kathleen Marie Jabkiewicz after December 18, 2003.

**RESPONSE:  The Defendants admit that after December 18, 2003, Dr.
Jemsek did not retest Ms. Jabkiewicz for Lyme disease because she had already
had a positive test on March 21, 2002, and had improved with treatment for Lyme
disease.  The Defendants deny any implication that the standards of practice
required re-testing on or after December 18, 2003.  Except as admitted Request
#109 is denied.**

110.   Dr. Jemsek's failure to retest Kathleen Marie Jabkiewicz for Lyme disease
after December 18, 2003 constituted a breach by Dr. Jemsek of the standard of care
applicable to him.

**RESPONSE: Denied.**

111.   The document identified on Bates Stamped pages 472 through 476 is a
true, genuine, authentic, and accurate copy of the original February 25, 2002 Lab
Corporation of America report concerning Kathleen Marie Jabkiewicz (the "Lab
Corporation Report").

**RESPONSE:  It is admitted that the document identified on Bates Stamped
pages 472-476 appears to be a Laboratory Corporation of America report
concerning Kathleen Marie Jabkiewicz.  Except as admitted, Request #111 is
denied.**

112.   The findings of the Lab Corporation Report concluded that Kathleen Marie
Jabkiewicz tested negative for Lyme disease.

**RESPONSE: Denied.**

- 22 -

113.   The Lab Corporation Report is admissible into evidence without further authentication.

**RESPONSE: Denied.**

114.   A second sample of Kathleen Marie Jabkiewicz's blood was furnished by the Jemsek Clinic to Medical Diagnostic Laboratories on or about March 12, 2002.

**RESPONSE:  It is admitted that specimen was collected on March 12, 2002 by an employee of the Jemsek Clinic and thereafter sent to Medical Diagnostic Laboratories for evaluation.  Except as admitted, Request #114 is denied.**

115.   The document identified on Bates Stamped pages 477 through 478 is a true, genuine, authentic, and accurate copy of the report prepared by Medical Diagnostic Laboratories.

**RESPONSE:  It is admitted that the document identified on Bates Stamped pages 477-478 appears to be a copy of a report prepared by Medical Diagnostic Laboratories.  Except as admitted, Request #115 is denied.**

116.   The report prepared by Medical Diagnostic Laboratories identified on Bates Stamped pages 477 through 478 is admissible into evidence without further authentication.

**RESPONSE: Denied.**

117.   The test performed by Medical Diagnostic Laboratories on March 12, 2002 is positive only for IGM bands 39 and 23.

**RESPONSE:  It is admitted that Medical Diagnostic Laboratories reported a positive Western Blot Lyme disease test with IGM bands 39 and 23 present. Except as admitted, Request #117 is denied.**

118.   Dr. Jemsek misdiagnosed Kathleen Marie Jabkiewicz with Lyme disease.

**RESPONSE: Denied.**

119.   Dr. Jemsek's continuation of treatment of Kathleen Marie Jabkiewicz for Lyme disease after December 18, 2003 constitutes a breach of his applicable standard of care.

**RESPONSE: Denied.**

120.   Dr. Jemsek's misdiagnosis of Lyme disease concerning Kathleen Marie Jabkiewicz was a proximate cause of Kathleen Marie Jabkiewicz's death.

- 23 -

**RESPONSE: Denied.**

121.   Dr. Jemsek' s diagnosis of "Chronic Lyme Disease" is a medically unsupported diagnosis.

**RESPONSE: Denied.**

122   Dr. Jemsek prescribed Klonopin to Kathleen Marie Jabkiewicz on or about March 5, 2004.

**RESPONSE: It is admitted that Mrs. Jabkiewicz was taking Klonopin on or about March 5, 2004.  Except as admitted, Request #122 is denied.**

123.   Dr. Jemsek prescribed Neurontin to Kathleen Marie Jabkiewicz on or about March 5, 2004.

**RESPONSE: It is admitted that Mrs. Jabkiewicz was taking Neurontin on or about March 5, 2004.  Except as admitted, Request #123 is denied.**

124.   Dr. Jemsek prescribed Keppra to Kathleen Marie Jabkiewicz on or about March 5, 2004.

**RESPONSE: It is admitted that Mrs. Jabkiewicz was taking Keppra on or about March 5, 2004.  Except as admitted, Request #124 is denied.**

125.   Dr. Jemsek was negligent during his care and treatment of Kathleen Marie Jabkiewicz in that he provided medical care and treatment outside the scope of his specialty.

**RESPONSE: Denied.**

126.   As a proximate result of the Defendants' negligence, Plaintiff Joseph Stanly Jabkiewicz has sustained damages for loss of consortium in excess of $10,000.00.

**RESPONSE: Denied.**

127.   As a proximate result of the Defendants' negligence, Plaintiff Joseph Stanly Jabkiewicz has sustained damages for personal injuries in excess of $10,000.00.

**RESPONSE: Denied.**

128.   As a proximate result of the Defendants' negligence, Matthew Joseph Jabkiewicz has sustained damages for personal injuries in excess of $10,000.00.

- 24 -

CHARLOTTE 440176v1

**RESPONSE: Denied.**

129.   As a proximate result of the Defendants' negligence, Michael Steven Jabkiewicz has sustained damages for personal injuries in excess of $10,000.00.

**RESPONSE: Denied.**

130.   The Defendants failed to provide medical care, nursing, and health care services to Kathleen Marie Jabkiewicz in accordance with the standards of practice among members of the same health care professions with similar training and experience situated in the same or similar communities at the time Kathleen Marie Jabkiewicz was under their care.

**RESPONSE: Denied.**

131.   Dr. Jemsek failed to timely and properly diagnose Kathleen Marie Jabkiewicz's medical condition.

**RESPONSE: Denied.**

132.   Dr. Jemsek failed to timely and properly record and communicate medically specific information regarding Kathleen Marie Jabkiewicz's condition, test results, and treatment.

**RESPONSE: Denied.**

133.   Nurse Roeske failed to timely and properly record and communicate medically specific information regarding Kathleen Marie Jabkiewicz's condition, test results, and treatment.

**RESPONSE: Denied.**

134.   Dr. Jemsek failed to establish, implement, or follow procedures to assure timely and proper communication regarding Kathleen Marie Jabkiewicz's condition, test results, and treatment.

**RESPONSE: Denied.**

135.   Nurse Roeske failed to establish, implement, or follow procedures to assure timely and proper communication regarding Kathleen Marie Jabkiewicz's condition, test results, and treatment.

**RESPONSE: Denied.**

136.   Dr. Jemsek failed to timely and properly treat Kathleen Marie Jabkiewicz's medical condition.

- 25 -

**RESPONSE: Denied.**

137.   Nurse Roeske failed to timely and properly treat Kathleen Marie Jabkiewicz's medical condition.

**RESPONSE: Denied.**

138.   Dr. Jemsek failed to initiate proper medical treatment to Kathleen Marie Jabkiewicz.

**RESPONSE: Denied.**

139.   Dr. Jemsek failed to follow up with standard protocol reference to Kathleen Marie Jabkiewicz.

**RESPONSE: Denied.**

140.   Dr. Jemsek failed to conduct examinations of Kathleen Marie Jabkiewicz in accordance with the applicable standard of care.

**RESPONSE: Denied.**

141.   Dr. Jemsek failed to note or chart findings or histories of Kathleen Marie Jabkiewicz in accordance with the applicable standard of care.

**RESPONSE: Denied.**

142.   As a proximate result of the aforesaid negligence of the Defendants and Kathleen Marie Jabkiewicz's death, Plaintiff Joseph Stanly Jabkiewicz has incurred funeral and burial expenses and Plaintiff Joseph Stanly Jabkiewicz and the decedent's children have lost Kathleen Marie Jabkiewicz's reasonably expected net income, her services, her protection, her care, her assistance, her society, her companionship, her comfort, her guidance, her kindly offices, her advice, and other losses as provided for in N.C.G.S. § 28-A-18-2(b).

**RESPONSE: Denied.**

143.   Prior to discontinuing Kathleen Marie Jabkiewicz's prescription for Prozac, Dr. Jemsek did not consult with a psychiatrist.

**RESPONSE:   It is admitted that Dr. Jemsek did not consult with a psychiatrist prior to discontinuing Mrs. Jabkiewicz' prescription for Prozac on February 25, 2002 and that Mrs. Jabkiewicz reported that she had been on Prozac over the last year and that she did not feel that it was helping her. However, it is denied that the standard of care for physician who is double-board certified in the**

- 26 -

medical specialties of Internal Medicine and Infectious Diseases, practicing in Huntersville in 2001 or 2002, required consultation with a psychiatrist prior to discontinuing Prozac. Except as admitted, Request #143 is denied.

144.    Prior to discontinuing Kathleen Marie Jabkiewicz's prescription for Prozac, Dr. Jemsek did not consult with any other physician regarding the protocol of Prozac for Kathleen Marie Jabkiewicz.

**RESPONSE:**  It is admitted that Dr. Jemsek did not consult with another physician prior to discontinuing Mrs. Jabkiewicz' prescription for Prozac on February 25, 2002 and that Mrs. Jabkiewicz reported that she had been on Prozac over the last year and that she did not feel that it was helping her. However, it is denied that the standard of care for physician who is double-board certified in the medical specialties of Internal Medicine and Infectious Diseases, practicing in Huntersville in 2001 or 2002, required consultation with another physician prior to discontinuing Prozac. Except as admitted, Request #144 is denied.

145.    Dr. Jemsek violated the applicable standard of care by discontinuing Kathleen Marie Jabkiewicz's protocol of Prozac.

**RESPONSE: Denied.**

This 12th of September, 2005.

Tricia Morvan Derr
State Bar No.  24438
One Wachovia Center, Suite 3500
301 South College Street
Charlotte, NC  28202-6037
Telephone:  704-331-4980
**Attorneys for Defendants**

Of Counsel:
Womble Carlyle Sandridge & Rice, PLLC
One Wachovia Center, Suite 3500
301 South College Street
Charlotte, NC  28202-6037

- 27 -

CHARLOTTE 440176v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing **DEFENDANT THE JEMSEK CLINIC, P.A.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS** was served on the Plaintiffs by causing to be deposited a copy of the same in an official depository of the United States Postal Service, in a postage-paid envelope, addressed to his counsel of record as follows:

> Harold C. Spears
> Eric Allen Rogers
> Caudle & Spears, P.A.
> 121 West Trade Street
> 2600 Interstate Tower
> Charlotte, NC 28202

This 12th day of September, 2005.

Tricia M. Derr

- 28 -

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

V E R I F I C A T I O N

JOSEPH G. JEMSEK, M.D., being first duly sworn, deposes and says that he has read the foregoing **DEFENDANT THE JEMSEK CLINIC, P.A.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS** and knows the contents thereof and that the same is true to the best of his knowledge, information and belief.

THE JEMSEK CLINIC, P.A.

By: _____
JOSEPH G. JEMSEK, M.D.

Sworn to and subscribed before me this _____ day of September, 2005.

_____
Notary Public

My Commission Expires: _11-2-07_

(S E A L)

CHARLOTTE 450366v1